# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **JESSICA ADAMS, TRACEY LOHSE,** | ) | |
| **and MARK J. DEMITROFF,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:11cv1309 TCM** |
| | ) | |
| **CITY OF MANCHESTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the Court following a non-jury trial on May 13, 2013.  Before trial,[1] the parties stipulated that the remaining Plaintiffs – Jessica Adams, Tracey Lohse, and Mark Demitroff – were non-exempt employees for purposes of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201-219, and that they were owed $15,425.71 for unpaid overtime. Consequently, the only remaining issue for trial was whether Plaintiffs are entitled to liquidated damages under 29 U.S.C. § 216(b).  On this issue, the parties produced the testimony of Police Chief Timothy Walsh of the City of Manchester, Missouri.  Plaintiffs also produced the testimony of Adams and proffered various exhibits.  Their exhibits 1, 3, 5, 12, 15, 16, 16a-1, 17-19, 20, 22, 32-36, 39, 40-45, 47, 52, and 53 were admitted into

---

[1]The amended complaint describes two classes of plaintiffs:  one is of Record Clerks employed by the Manchester Police Department (the Department) and the other is of police officers employed by the Department.  The first two of the six counts in the complaint are for violations of the Fair Labor Standards Act (FLSA); the remaining four counts are for violations of Missouri state law.  As of the deadline for opting in to the collective action, only two individuals, Christian Hagler and Charles Everingham, were in the police officer class and three, Adams, Lohse, and Demitroff, were in the Record Clerk class.  Hagler's and Everingham's claims were later dismissed with prejudice on their motion.  The Missouri state law claims in Counts III, IV, V, and VI have been dismissed on Plaintiffs' motion.  Thus, at the time of trial, only the FLSA claims of Adams, Lohse, and Demitroff remained.

evidence; their exhibits 13 and 54 were not.  Exhibits A, B, and C were proffered by the City of Manchester (Defendant) and were also admitted into evidence.

Based upon the testimonial and documentary evidence produced at trial, the Court makes the following findings of fact and conclusions of law.

## Findings of Fact

1.      Defendant is a municipal government within the State of Missouri and operates the Manchester Police Department (the Department).

2.      Jessica Adams (Adams) was employed by Defendant as a Record Clerk for the Department from October 5, 2009, to July 19, 2011.

3.      Tracy Lohse (Lohse) was employed by Defendant as a Record Clerk for the Department from October 5, 2009, to April 1, 2011.

4.      Mark Demitroff (Demitroff) was employed by Defendant as a Record Clerk for the Department from October 5, 2009, to February 11, 2011.

5.      Chief Timothy P. Walsh (Chief Walsh) became the acting Chief of Police for the Department in the summer of 2009.  He became the Chief of Police in 2011.  He graduated from the St. Louis Police Academy in 1973, worked for ten years in the Velda Village Police Department, and became a police officer for Defendant in 1983.

6.      The Department moved out of City Hall and into its own building sometime prior to Adams being hired by the Department on October 5, 2009.  When the move occurred, and in an effort to provide the best services for Defendant, Chief Walsh decided to move the Record Clerks from City Hall to the Department's new location.  As part of that move, the Record Clerks were to wear a uniform consisting of khaki pants, a blue polo shirt, a small

badge, and a Manchester Police Department patch on the shirt.  This uniform is not the same as the uniforms worn by Defendant's police officers.  Additionally, the Record Clerks became subject to pre-employment background checks, drug screening, and finger-printing.  Prior to 2009, there were no Record Clerks in the Department; rather, the Record Clerks worked in and for the Manchester City Hall.  Record Clerks and Police Administrative Assistants (PAA) are the same positions.

7.     The Record Clerks after 2009 had access to classified police information, were assigned to a police squad but were not police officers, and oversaw prisoners on television monitors.  They did not have any direct contact with prisoners.  Record Clerks had no arrest authority and were not licensed as police officers in Missouri.  Both prior to and after 2009, Record Clerks entered traffic tickets into the city records, processed police reports, and entered data into the regional law enforcement database (REJIS).  While working in the police building, the Record Clerks were assigned to a secure area called "the box," had limited access to prisoners, and had no access to prison cells.  All their work was performed behind a desk.  No police officer worked in "the box" with the Record Clerk unless relief was required.  The Record Clerks did not carry weapons.

8.     In 1994, the Department implemented Special Order 9.8D, outlining the Department's policy regarding payment and scheduling of its police officers.  Special Order 9.8D did not apply to Record Clerks.  On August 23, 2009, Special Order 9.8E became effective, canceling Special Order 9.8D except for the provisions relating to various benefit plans.  Special 98E applies to both police officers and Record Clerks.  (Pls.' Exs. 1, 3.)

- 3 -

9.      Pursuant to the changes made by Chief Walsh for the Record Clerks, described above, and consistent with Special Order 9.8E, the Record Clerks began working twelve-hour shifts with four days on-duty followed by four days off-duty – the same schedule as police officers.  Like police officers, the Record Clerks did not receive overtime unless their work schedule exceeded 171 hours in a 28-day period.  Prior to the 2009 change, Record Clerks were paid time-and-a-half for work over forty hours per week.

10.     Defendant's Chief of Police oversees all activity of the Department and supervises all police officers.  The road officers include four squads, each with five police officers and a sergeant.  There are also two relief police officers, a relief sergeant, and two school resource police officers.  All Manchester police officers are certified and licensed by the Missouri Department of Public Safety.

11.     Also, Defendant's Chief of Police reports to the City Administrator and the Board of Alderman.  The Manchester City Code requires, inter alia., that the Chief review the police department organization and structure with the Mayor and Board of Alderman and amend as necessary.  (Pls.' Ex. 17, Manchester City Code § 200.060.5.)  The Chief is also to prepare a manual to facilitate the rules and regulations of the Department and submit the manual to the City Administrator, Mayor and Board of Alderman.  (Id. § 200.060.8.)  The Board of Alderman is to review the manual bi-annually.  (Id.)  The Chief is to "[s]upervise the enforcement of all City ordinances, State and Federal laws."  (Id. § 200.060.6.)  The City's Personnel Manual is part of the City Code.  And, the Chief issues special orders for the Department.

- 4 -

12.     Resources available to the Police Chief include the City Attorney, City Administrator, Missouri Department of Public Safety, the internet, and law enforcement databases.  Chief Walsh was not familiar with legal research databases such as Westlaw, Lexis, or Nexis.  Nor was he aware of the March 7, 2008, Opinion Letter from the United States Department of Labor (DOL) about FLSA exemptions for fire protection and law enforcement activities.  See Plaintiffs' Exhibit 44.  This opinion provides that personnel performing civilian support functions such as dispatchers, clerks, and radio operators are not included in the term "employee in law enforcement activities."  Id.

13.     When serving as Acting Chief of Police, Walsh directed Sergeant West to draft Special Order 9.8E, the subject of which was scheduling and work hours.  (See Pls.' Ex. 3.) Sergeant West had scheduling training and experience.  After Sergeant West drafted Special Order 9.8E, Chief Walsh reviewed the draft and made some minor changes.  Other than meetings with the Police Department staff members, Chief Walsh never talked to anyone else about the changes.  He never sought a legal opinion, never talked to the City Attorney about the changes, and never looked into any database concerning the DOL.  He did read or review portions of the FLSA, but testified he could not recall what sections he had read and or for how long he had reviewed the FLSA.  He did not take any significant step necessary to determine if Record Clerks are non-exempt employees. Chief Walsh knew that police officers are exempt employees under the FLSA.  It was his "feeling" that, because Record Clerks were performing some law enforcement functions, they also became exempt employees and, like police officers, were able to work 171 hours in a 28-day period without being owed overtime pay.  Chief Walsh considered the Record Clerks to be law enforcement personnel, but knew

they were not police officers.  He  believed the changes in hours for the Record Clerks "seemed appropriate" under the circumstances.  He did not know that exempt status under the FLSA applied only to police officers and firefighters.  Chief Walsh admits he made a mistake and now knows that Record Clerks are not exempt employees under the FLSA.

14.     The changes in scheduling for the Record Clerks was discussed at the August 17, 2009, Board of Alderman meeting. (Pls.' Ex. 43 at 7-9.)  The issue of compliance with the FLSA was not discussed at the meeting.  (Id.)  No legal opinion on the issue was sought by the Mayor or Board of Alderman.

15.     In April 2011, Chief Walsh first became aware of the possibility that Record Clerks were non-exempt employees under the FLSA after Sergeant West attended training at the Police Academy and brought the issue to his attention.  Chief Walsh then sought a legal opinion from the City Attorney.  On May 10, 2011, Chief Walsh sent an e-mail to all Record Clerks changing their daily work schedule from twelve-hour shifts to eight-hour shifts.  (Pls.' Ex. 39.)  Four days later, Adams sent an e-mail to Chief Walsh and a Sergeant Hunn expressing her concern about the changes in scheduling.  (Pls. Ex. 5.)  In the e-mail, she cited and quoted a DOL summary of the FLSA's overtime provisions and Missouri statutes dealing with "exempt" employees.  (Id.)  She alleged that Defendant was violating the FLSA and state law.  (Id.)  On May 19, 2011, Chief Walsh sent an e-mail to all Record Clerks stating that their overtime issues had been brought to the attention of Defendant's legal staff and that the staff's initial response was that the clerks' work schedule and compensation had been "handled appropriately'" (Pls.' Ex. 40.)  The City Attorney was continuing to research the matter.  (Id.)

16.     Adams did internet research on the FLSA on her own.  She is not an attorney and has no legal research experience.  After receiving Chief Walsh's e-mail, she called the DOL.  She was advised by a person at the DOL that Defendant was, in fact, violating the FLSA.  She was further advised that an attorney would contact her.  She then hired counsel.  By the time Adams left her job with Defendant on July 20, 2011, the twelve-hour shift schedules had not change.  The changes in scheduling occurred in September 2011.  No back-pay for overtime was paid to the Record Clerks at that time.

17.     Paying Record Clerks as police officers violates Defendant's City Personnel Manual.  (Pls. Ex. 47 at 39.)  The Personnel Manual defines non-exempt and exempt employees as used in the FLSA issued by the DOL.[2]  (Id. at 40.)  Chief Walsh did not review the Personnel Manual prior to making the schedule changes for Record Clerks.

18.     Chief Walsh and Defendant never intended to violate the FLSA.  The violation was a mistake.  Chief Walsh believed that the use of the term "law enforcement activities" in the FLSA included Record Clerks because of their new responsibilities relating to law enforcement.

19.     Regardless of its intent, Defendant violated the FLSA by treating Record Clerks as police officers in scheduling work hours and in overtime pay.  Defendant has admitted violating the FLSA.

## Conclusions of Law

---

[2]This characterization of the FLSA being "issued" by the DOL is in the Personnel Manual.

An employer who violates the FLSA is liable to the employee in the amount of his or her unpaid overtime[3] and "an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  "Liquidated damages are not considered punitive, but are 'intended in part to compensate employees for the delay in payment of wages owed under the FLSA,'" **Chao v. Barbeque Ventures, LLC**, 547 F.3d 938, 941 (8th Cir. 2008) (quoting <u>Hultgren v. Cnty of Lancaster, Neb.</u>, 913 F.2d 498, 509 (8th Cir. 1990)), such delay having possibly "'resulted in damages too obscure and difficult of proof for estimate other than by liquidated damages,'" **Broadus v. O.K. Indus., Inc**. 226 F.3d 937, 943 (8th Cir. 2000) (quoting <u>Brooklyn Sav. Bank v. O'Neil</u>, 334 U.S. 697, 707 (1945)).  Thus, "[t]he term 'liquidated damages' in the [FLSA] is something of a misnomer because it is not a sum certain determined in advance, rather it is a means of compensating employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due." **Id.** (internal quotations omitted).

"An amount of liquidated damages under § 216(b) is mandatory unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA." **Braswell v. City of El Dorado, Ark.**, 187 F.3d 954, 957 (8th Cir. 1999).  "The employer bears the burden of proving both good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception."**Chao**, 547 F.3d at 941-42 (8th Cir. 2008) (internal quotations omitted).  The burden is not carried by an employer's showing of a lack of specific knowledge or the lack of complaints from employees about overtime pay or by the hiring of a third-party entity to manage payroll

---

[3]As noted above, see note 1, supra, the parties have stipulated to the amount of unpaid overtime owed.

accounts. **Id.** at 942-43.  Rather, "the employer must establish 'an honest intention to ascertain and follow the dictates of the FLSA.'"  **Id.** at 942 (quoting Hultgren, 913 F.2d at 509.)  This, in turn, requires a showing that the employer "took affirmative steps to ascertain the [FLSA's] requirements . . . ."  **Id.** (internal quotations omitted).  "[T]he employer must also prove that its position was objectively reasonable."  **Hultgren**, 913 F.2d at 509.  This "reasonableness" test does not, however, require the Court to "evaluate who in the employer's chain of command authorized 'the act or omission.'"  **Thomas v. Howard Univ. Hosp.**, 39 F.3d 370, 373 (D.C. Cir. 1994).

The employer in **Cross v. Ark. Forestry Comm'n**, 938 F.2d 912 (8th Cir. 1991), passed the "reasonableness test."  In that case, dispatchers and other employees engaged in fire protection activities but who spent more than twenty percent of their time in activities unrelated to fire protection were placed on a "subject-to-call status" and sought compensation for time spent on such status.  **Id.** at 914.  The Commission denied their request based on a determination of the state's Office of Personnel Management that the employees were exempt under 29 U.S.C. § 207(k)[4] from the overtime pay requirement.  **Id.** at 914-15.  The court found the employer's decisions were  (a) made in good faith *and* (b) objectively reasonable.  **Id.** at 918.  It premised its latter conclusion on the Commission's reliance on the decisions of the state's personnel experts in a complex area of law recently made applicable to state and local governments.  **Id.**

---

[4]Section 207(k) governs exemptions from overtime pay requirements for employees of a public agency engaged in fire protection or law enforcement activities.

Chief Walsh did not solicit either advice or an opinion on whether the new schedule order for Record Clerks complied with the FLSA.  He is a career police officer who knows the difference between exempt and non-exempt status and knows that police officers are exempt because of their unusual work schedules.  He testified that he read the FLSA, although it is unclear what sections of the FLSA he read.  When testifying, he could not cite to the Court what he had read or how much time he took to research the FLSA or any portion thereof. Based on his testimony that the FLSA exempts employees who engage in law enforcement activities, he may have read § 207(k).  He never talked to anyone about his decision except Sergeant West and senior members in the Department.  He performed no other independent research, did no internet research, did not talk to an attorney, did not talk to anyone in the Missouri Department of Public Safety, did not use any law enforcement resource, and did not research or talk to anyone in the DOL.  The use of any one of those tools may have resulted in Chief Walsh discovering his mistake.  Instead, Sergeant West learned of the mistake when attending a class at the Police Academy.  Clearly, other law enforcement officials knew that Record Clerks are not exempt employees.  Adams, who is not an attorney and does not possess a long resume in law enforcement, found the answer in short order by looking at the DOL's website.  Additionally, Chief Walsh testified that the change in duties, hours, and location of Record Clerks was a significant change in Departmental procedure for Defendant.  It would, therefore, have been  prudent for the Department head to do some independent research before making these significant changes.

For the foregoing reasons, Defendant has not affirmatively established that it acted in good faith by attempting to ascertain the requirements of the FLSA.[5]  Defendant has failed to meet the subjective standard of good faith by failing to establish an honest intention to ascertain and follow the FLSA.   See **Chao**, 547 F.3d at 942.

With respect to the reasonable grounds requirement of the FLSA, because Defendant is unable to produce any evidence on what Chief Walsh reviewed it is impossible for the Court to find the Chief's interpretation was, in fact, reasonable.  Further, it is not reasonable for an experienced head of law enforcement to make such a significant change in employee work hours without seeking some guidance from other experts in the field.

Because Defendant's decision not to pay the Record Clerks for their overtime hours was not made in good faith and was not objectively reasonable, the Court finds that an award of liquidated damages is appropriate.   Consequently, an additional $15,425.71 shall be awarded as liquidated damages.

An appropriate Judgment shall accompany these Findings of Fact and Conclusions of Law.


/s/Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of June, 2013.

---

[5]In so finding, the Court does not mean to imply anything about Chief Walsh's character. His testimony made clear that he is an honorable and dedicated member of law enforcement who was attempting to better the Department for the benefit of Defendant's citizens.  In his attempt to do so, however, he violated the FLSA.